E-FILED
Tuesday, 25 April, 2017  04:09:38 PM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLIINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CMFG Life Insurance Company,<br>    Plaintiff,<br><br>v.<br><br>David C. Wolfe, as Trustee for the Norma S. Ashley Revocable Trust dated November 29, 2011, David C. Wolfe, Keith A. Wolfe, Tyler Schild, as surviving son of Pamela S. Schild, Seth Schild, as surviving son of Pamela S. Schild, and Terry A. Schild, as surviving spouse of Pamela S. Schild,<br><br>    Defendants-in-Interpleader.<br>Keith A. Wolfe,<br><br>    Cross-Claim Plaintiff,<br><br>v.<br><br>David C. Wolfe, as Trustee for the Norma S. Ashley Revocable Trust dated November 29, 2011, Terry A. Schild, Tyler Schild, and Seth Schild, indivislually,<br><br>    Cross-Claim Defendants. | Case No. 4:15-cv-04139-SLD-JEH |

## Report and Recommendation

Before the Court are the "Motion for Rule 37 Sanctions" (D. 38) and motion for summary judgment (D. 37) filed by Defendants/Cross-Claim Defendants David C. Wolfe ("David"), as Trustee of the Norma S. Ashley Revocable Trust dated November 29, 2011 ("the Trust"), and David C. Wolfe, individually ("Cross-Defendants,"

1

collectively). Cross-Claim Plaintiff, Keith A. Wolfe ("Keith"), proceeding *pro se* after his counsel withdrew, filed no response to either motion. The Court conducted an in-person hearing on the motion for sanctions on April 20, 2017. The presiding district judge referred both motions to the undersigned, and the motions are ripe for ruling.

For the reasons stated, *infra*, it is recommended that the motion for summary judgment be GRANTED. Additionally, it is recommended that the motion for sanctions be found MOOT.

# I

CMFG Life Insurance Company ("CMFG") filed this Interpleader action, asking the Court to determine the proper recipient(s) of an annuity policy it issued to Norma Sue Ashley, the decedent. CMFG deposited the contested funds with the Court and has withdrawn from the case. With the exception of Keith, all the remaining parties agree that the funds should be distributed to the Trust. Keith, however, in his answer and cross-claim, alleges that he and David are the sole beneficiaries of the Annuity. (D. 10 at ECF p. 13).

The undisputed facts in this case are as follows.[1] On or around October 26, 2007, Norma Ashley ("Norma") purchased a Single Premium Deferred Annuity Contract from the Interpleader. Norma had five children: Keith, David, Daniel Wolfe ("Daniel"), Pamela Schild ("Pamela"), and Rodney Ashley. Although Daniel and Pamela predeceased Norma, Pamela had two children with her Husband, Terry Schild, Tyler and Seth Schild.

The initial beneficiaries of the Annuity were Keith, David, and Pamela. The Annuity provided that the beneficiary could be changed by written request during

---

[1] Keith failed to provide initial disclosures, failed to answer interrogatories, failed to respond to requests to admit, and failed to respond to the motion for summary judgment. Moreover, Keith made clear at the hearing on the motion for sanctions that he had no intention of responding to the pending motions or discovery requests, commenting that he was "disinterested in responding." Accordingly, the "Statement of Undisputed Material Facts" in the Cross-Defendants' motion are taken as admitted pursuant to Local Rule 7.1(D)(2)(6)("A failure to respond to any numbered fact will be deemed an admission of fact."), and all facts in this section are taken from the motion's recitation thereof. (D. 37 at ECF pp. 3-7). Moreover, Keith is deemed to have admitted the unanswered requests for admission. *See* Fed. R. Civ. P. 36(a)(3).

2

the life of the annuitant—said change taking effect as of the date the written change was signed. (D. 37 at ECF p. 3-4). Specifically, the contract provides:

> **"How can you change the owner or beneficiary of this contract?**
>
> You may change the owner or beneficiary of this contract by written request at any time while the annuitant is alive. The change will take effect as of the date you signed it. We are not liable for any payment we make or action we take before receiving any such written request in our home office."

*Id.* (emphasis in original).

In 2011, Norma consulted an attorney for estate planning purposes and, after that consultation, established the Trust—she signing that Trust on November 29, 2011. Her attorney evaluated her prior to the creation of the Trust, and he concluded that Norma was not suffering from any mental incapacity at the time she established it. Likewise, when she signed the Trust, she had sufficient mental capability to know that she was establishing a trust and to make a disposition of her property according to her own plan. She was also not under any undue influence. In executing the Trust, Norma intended and desired that all of her property and assets be transferred to the Trust and distributed according to its provisions upon her death. Under the terms of the trust, upon Norma's death, the Trust would be distributed as follows: 1/6 to David; 1/6 to Keith; 1/6 to the estate of Pamela; 1/6 to David as Trustee of the Rodney Ashley Special Needs Trust dated November 29, 2011; 1/6 to Norma's stepdaughter, Sandra Henning; and 1/6 to Norma's granddaughter Kerrie Ann Kainu.

After executing the Trust, Norma began the process of transferring her assets into it. Regarding the Annuity, Norma obtained the Change of Beneficiary Form needed to change the beneficiary of the Annuity, and, on July 8, 2012, executed that form designating the Trust as the sole beneficiary of the Annuity. Again, at the time she executed this form, Norma had sufficient mental capability to know what she was doing and to make a disposition of her property according to her own plan. She was also not under any undue influence at the time. When she signed the form, she

3

intended to make the Trust the primary beneficiary of the Annuity, nor did she ever change her mind about this after executing the form.

Norma died on January 3, 2015. Although Norma believed she had effectively changed the beneficiary of the Annuity to the Trust, she was unaware that CMFG had not received the form prior to her death. Only when David, as Trustee, discovered the executed form after Norma's death and provided it to CMFG did they become aware of Norma's intention to change the beneficiary to the Trust.

When all parties to this case made claims on the Annuity, CMFG filed the action to determine the proper beneficiary of the Annuity. Specifically, CMFG brought an Interpleader action pursuant to 28 U.S.C. § 1335 and Federal Rule of Civil Procedure 22 to obtain adjudication as to the competing claims to the Annuity.

## II
### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323- 24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183(7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more than

4

simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson* at 250.

## B

As an initial matter, Keith's failure to respond to the motion for summary judgment is, standing alone, a sufficient basis for the Court to grant the motion. Local Rule 7.1(D)(2) provides that a failure to respond to a motion for summary judgment "will be deemed an admission of the motion." However, even without deeming the lack of a response as an admission of the motion, the motion should still be granted in light of the undisputed facts.

The central question in this case is whether the executed and signed Change of Beneficiary form was effective under Illinois law and the language of the Annuity, notwithstanding the fact that CMFG did not receive the form during Norma's lifetime.

"Where the insurer has specified in the policy the method for changing the beneficiary, some type of compliance with the policy terms is required." *Minnesota Life Ins. Co. v. Kagan*, 724 F.3d 843, 849 (7th Cir. 2013), *quoting Hoopingarner v. Stenzel*, 329 Ill.App.3d 271, 263 Ill.Dec. 691, 768 N.E.2d 772, 776 (Ill, 2002). Naturally, "exact compliance with policy terms will effectuate a change in an insurance policy's beneficiaries; however, in Illinois, 'exact compliance with the terms of the policy is not necessary' to effectuate a change." *Minnesota Life Ins. Co.*, 724 F. 3d at 749, *quoting Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 664 (7th Cir. 1999). Rather, Illinois' doctrine of "substantial compliance" is an alternative to "exact compliance" with policy terms so long as (1) the "policyholder has shown sufficient 'intent to make the change [in

5

beneficiaries] and [2] positive action towards effecting that end.'" *Minnesota Life Ins. Co.*, 724 F.3d at 749, *quoting Dooley v. James A. Dooley Assocs. Emps. Ret. Plan*, 92 Ill.2d 476, 65 Ill.Dec. 911, 442 N.E.2d 222, 227 (1982).

The Cross-Defendants argue that Norma substantially complied with the policy terms, citing *Connecticut General Life Ins. Co. v. Gulley*, 668 F.2d 325 (1982). In that case, the court found the insured to have "substantially complied" with the policy terms when he executed a change of beneficiary form but failed to send it to the insurer. *Connecticut General Life Ins. Co.*, 668 F. 2d at 327-28. *But see Minnesota Life Ins. Co.*, 724 F.3d at 853-54 (finding that insured did not substantially comply with policy terms when he failed to send a change of beneficiary form to the insurer).

The Court finds, however, that the Cross-Defendants need not rely on the doctrine of substantial compliance in this case because Norma in fact exactly complied with the contract's requirements for changing a beneficiary. Section 4.2 of the Annuity requires only that a change in beneficiary (1) be in writing and (2) be made while the annuitant is alive. The undisputed facts set forth, *supra*, establish that Norma met both of these requirements. Moreover, the policy explicitly states that the "change will take effect as of the date you signed it." In other words, nothing in the policy requires the insurer to *receive* the written change of beneficiary request for it to be effective. Indeed, the policy's only reference to receipt of a change in beneficiary request is that the insurer "is not liable for any payment we make or action we take before receiving any such written request in our home office." This language is not a requirement that the insurer receive a written request to change a beneficiary for it to be effective; it only shifts the risk of mistake for an unreceived written change request onto the insured.

Although the contract in *Minnesota Life Ins. Co.* also had language which made a change of beneficiary effective when signed, that contract also stated that any change of beneficiary request was "subject to [Minnesota Life's] approval." *Minnesota Life Ins. Co.*, 724 F.3d at 851. In rejecting an argument that the insured's execution of

the change of beneficiary form constituted exact compliance, the Court specifically relied upon this "subject to approval" language, finding that "[t]he juxtaposition of the words 'request' and 'approval' with the phrase in question indicates that new beneficiaries are not set in stone as soon as a policyholder completes and signs a form." The contract in the case before the Court contains no similar language which might qualify the "effective upon signing" language. Accordingly, given that the undisputed facts establish that Norma did everything required by the policy to change the beneficiary, it is recommended that the motion for summary judgment on the Interpleader claim be GRANTED in favor of the Cross-Defendants and the funds deposited in the registry of the Clerk of the Court be awarded to the Trust.

C

The Cross-Defendants also seek summary judgment against Keith on his cross-claim, wherein he alleges that Norma was not competent to sign the trust documents (D. 10 at ECF p. 9) and that Norma's change of beneficiary was ineffective because CMFG did not receive the change before her death. (D. 10 at ECF p. 11).

In light of the Court's recommendation, *supra*, in sub-section B, Keith's cross-claim challenging the change of beneficiary to the Trust must fail. Additionally, as the Cross-Defendants argue, given the undisputed facts in this case, Keith's allegation that Norma was incompetent to execute the Trust (or even change the beneficiary of the Annuity) fails as well. It is well settled in Illinois that "[w]here a person has sufficient mental capacity to transact ordinary business and act rationally in the ordinary affairs of life he has sufficient mental capacity to dispose of his property by will" or trust. *Sloger v. Sloger*, 26 Ill.2d 366, 186 N.E.2d 288, 290 (1962). One is only incompetent to execute a will or trust disposing of ones property if at the time she "lacks sufficient mental capacity to know the natural objects of [her] bounty, to comprehend the kind and character of [her] property, to understand the nature and effect of [her] act, and to make a disposition of [her] property according to some plan formed in [her] mind." *Sloger*, 186 N.E.2d at 290.

7

Given Keith's failure to answer requests to admit and failure to respond to the statement of undisputed material facts contained in the Cross-Defendants' motion for summary judgment, it is impossible for him to establish that Norma lacked the mental capacity to create the Trust or change the beneficiary of the Annuity. Specifically, Keith, pursuant to Federal Rule of Civil Procedure 36(a)(3), has admitted, by his failure to respond to the Cross-Defendants' requests to admit, to the following:

- At the time Norma S. Ashely signed the Trust …, Norma S. Ashley had sufficient mental capability to know that she was establishing a trust, to know and remember the natural objects of her bounty, to comprehend the character and extent of her property, and to make disposition of her property according to her plan (D. 38 at ECF p. 18);

- At the time she signed the Trust document …, Norma S. Ashley was not under the undue influence of any person (D. 38 at ECF p. 18);

- Norma S. Ashley intended and desired that all of her property and assets be transferred to the Trust and distributed pursuant to the provisions of the Trust following her death (D. 38 at ECF p. 18);

- At the time she signed the Change of Beneficiary form …, Norma S. Ashley had sufficient mental capability to know that she was changing the beneficiary of the Annuity, to know and remember the natural objects of her bounty, to comprehend the character and extent of her property, and to make disposition of her property according to her plan (D. 38 at ECF p. 18);

- At the time she signed the Change of Beneficiary form …, Norma S. Ashley was not under the undue influence of any person (D. 38 at ECF p. 19);

- When Norma S. Ashley executed the Change of Beneficiary form …, she intended to make the Trust the primary beneficiary of the Annuity (D. 38 at ECF p. 19); and

- After executing the Change of Beneficiary form …, Norma S. Ashley never changed her mind regarding who she wanted to be the beneficiary of the Annuity (D. 38 at ECF p. 19).

These admissions completely preclude Keith from establishing that Norma lacked capacity or was under any undue influence when executing the Trust or the Change of Beneficiary form. Moreover, even without the admissions, Keith's failure to respond at all to the motion for summary judgment leaves the Court without even a scintilla of evidence in support of his cross-claim. *See Anderson*, 477 U.S. at 256-57 (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 586); *Hot Wax, Inc.*, 191 F.3d at 818 ("The non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he 'must do more than simply show that there is some metaphysical doubt as to the material fact.'").

Because there are no disputed facts regarding Norma's capacity to create the Trust and change the beneficiary to the Annuity, nor are there disputed facts establishing any undue influences on her, it is recommended that the Cross-Defendants' motion for summary judgment be GRANTED in favor of the Cross-Defendants on Keith's claims that the Trust or the change of beneficiary are in any way invalid.[2]

### III

For all the reasons stated herein, it is recommended that the Cross-Defendants' motion for summary judgment be GRANTED in favor of them on both the Interpleader and the Cross-Claims, and that the funds in the registry of the Clerk of the Court be turned over to David C. Wolfe, as Trustee of the Norma S. Ashley Revocable Trust dated November 29, 2011, for distribution according to the terms of that Trust. It is also recommended that the "Motion for Rule 37 Sanctions" be found MOOT, given the recommendation that summary judgment be granted.

Any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) working days after service of this Report. FRCP 72(b)(2);

---

[2] The Court does not reach the Cross-Defendants' argument that Keith's cross-claim is also barred by the doctrine of *res judicata*, as it is unnecessary to consider in light of the analysis set forth in this subsection.

28 USC § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v Zema Sys. Corp.*, 170 F3d 734, 739 (7th Cir 1999); *Lorentzen v Anderson Pest Control*, 64 F3d 327, 330 (7th Cir 1995).

*It is so recommended.*

Entered on April 25, 2017.
s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE